The cause Was learnedly argued at considerable length, in May term last; and at this term, the following opinions were delivered.
Kirkpatrick, C. J.
Upon the Case presented by this special verdict, I am of opinion,
1st. That the testator's son William, took, tinder the will of his father, a vested remainder in tail male, in the premises in question, expectant on the death of his brothers, Isaac and Jacob, without issue.
[*] 3d. That upon the death of William, without mate hdrs, the ultimate remainder in fee, descended to the right heirs of Archibald Hamilton, under whom the plaintiff1 claims:
I think there can be no doubt but this would be the course upon the principles of the common law; and upon looking into our act limiting estates-tail, and the supplement thereto, I can see nothing to alter this course.
The first part of the section upon this subject, relates to devises in tail, made before the passing the act; and in this there are certain modes of expression, which the Legislature thought it necessary to explain, by a subsequent act. From the Words “passed through one descent since the death of the testator, and is now m the second, or more remote descent from the testator," it had been doubted by some, (and I think not without reason) whether, if an estate-tail general had been devised to A, and upon his death, had descended to his son B,' it had then passed through one descent, artd was in the second, or more remote descent; or, Whether B'a life also must have terminated, and the estate must have descended in the same line, to hís son C. ill order to make it a fee simple. And to explain this doubt, was the object of the supplement.
But the present being the case of devise, made ajUf the passing of the act, we have nothing to do either With the first part of the section, or with the supplement, Which goes only to explain its words. They relate to another thing.
This act, therefore; limiting estates-tail, sd far as it touches this case, is expressed in these words/ — “ All devises Which shall hereafter be made in tail of arty Mind, shall be deemed, &c. to vest in the person to whom the same may descend, agreeably to the devise or entailment, after the decease of the first devisee, all the estate," &ev
*601 [*] Now, if I am right in my first position, there was no descent to William. He took as a remainder-man under the will, and not as heir, after tlib decease of the first devisee: So faf as relates to the subject under consideration, or what these acts call the line of entailmeut, he was the first devisee himself. The act in question, therefore, cannot apply to him. It cannot destroy the limitation, and turn the estate in his hands; into a fee simple;
From this view7 of the subject, I am inclined to think, there must be judgment for the plaintiff. But; unless my brethren are perfectly satisfied, I should wish another argument as to the ability of the heirs out Of possession, and having only a right of entry, to convey, &c.
*Rossell, J.
— Archibald Hamilton, by his last will, dated the 13th of March, 1787, devised to his sons Isaac and Jacob; and to their heirs, lawfully begotten of their own bodies, all his lands; and if they should die without issue, then he bequeathed these lands to bis son William, and to his maid heirs. — Archibald, the testator, died in December, 1788, Isaac and Jacob came into possession of the lands in question, on the decease of their father, and died, one in June; 1789, the other in December following, without issue, arid William took possession agreeably to the directions of the will. William died in 1802; intestate, and without male issue; but leaving seven daughters.
Two questions have been strenuously argued before the Court.
1st. Will the words in the devise to William arid Ins maid heirs, create an estate-tail.
2d. After the death of Isaac and Jacob, who Were thtí first devisees in tail, did not the possession of William, vest in him a fee simple, under the laws of this State.
As to the first, it has been frequently adjudged, that the words “ heirs male” in a will, create an estate-tail; and some authorities go so far as to say, they are always intended of the body, in a will.
Secondly:-=-Our act “to pass estates in fee, by devises, and to limit estates in tail,” was passed 1784, and thfe explanatory act in 1786, previous to the will arid death of Archibald Hamilton, and will therefore regulate the disposition of this estate as far as the devisees in such Will, Comb within their provisions.
The second section of the act of 1784, by which; estates in tail are limited, is couched in terms so obscure and uncertain, that the Legislature were induced to [*] pass the act of 1786, to explain and do away this uncertainty. It seems, however, that they have still left the matter in doubt, *602 as is abundantly proved by the present controversy. If we strike out the words in the second section of the first act, which the Legislature intended to explain, and ingraft the explanatory words of the second act in their place, the section would read thus; — ‘‘All. lands, or other real estate, which have heretofore been devised in tail, and hath, agreeably to such devise or entail, been possessed by the first deviseé in 'tail, and is the property of the next devisee in tail, áfter the decease of the first devisee in the line mentioned in the devise in tail, under which they may claim, shall be deemed, taken and adjudged to be the proper estate in fee simple of the possessor, provided the testator had an absolute estate in the same, and that the person in possession holdeth the same in the line of entailment mentioned and directed in such devise in tail; and all devises hereafter made in tail of any kind, shall be deemed to vest in and entitle the person to whom the same may descend, agreeably to the devise or entailment, after the decease of the first devisee, to all the estate in the devised premises which the testator was entitled to: — And no entailment of lands, &c. shall continue to entail the same in any case whatever, longer than the life of the person to whom the same hath been, or shall be first given or devised by such entailment.”
In searching for the intention of the Legislature, where the language of a statute is doubtful, it is a sound rule, that we look for the mischief -arising under the old law, as well as the remedy meant to be applied. The mischief attending entailments under the old law, requiring Legislative correction, we find unequivocally expressed in the preamble of the first mentioned act; and was, that “devises were sometimes made in tail without limitation, whereby the heirs were put to considerable expense in docking them; fora remedy in this case, be it enacted.”
[*] We cannot suppose then that the Legislature intended to interfere with any settled rules of construction laid down in the common law cannons, respecting descents, the stocks from which these descents should be cast, &c. These ancient rules were left untouched, and stand on the same foundation, and must receive the same construction, as if these acts never had a being. It is an acknowledged rule, that estates-tail shall go strictly in the line and manner limited and directed in the will of a- testator, when this direction is not in contradiction to the law of the land. If we examine separately, every sentence of the second section of the first mentioned act, respecting the second devisee in tail, in whom, after the decease of the first devisee, an estate in fee simple was to vest, we find the concluding language of each sen- *603 fence, in substance, the same; and it would be seen that the Legislature had the above rule in their eye, whilst penning the law; else, why do we find them so careful in the choice of words, which, it appears, could only be selected to guard and secure it; — .“ the line mentioned in the devise,” “ provided the possessor holdeththe same in the line of entailment;” “the person to whom the same may descend, agreeably to the entailment; and lastly, “the person to whom the same hath been, or shall be first given by such entailment.” This concluding sentence, at first view, appears most strongly in favor of the defendants ; but it clearly refers to the amended part of the second section, applying to estates that had already passed into the possession of the second devisee, and the words “by such entailment,” must necessarily refer to the line of entailment there mentioned. All this particularity could not have been for nought: it certainly had its meaning, and it would be bard to find for it any other than that the lines, stirpes, or stocks so well regulated and defined by the common law, and by which descents were cast, should be carefully protected, if this construction be correct, in the question before us, Isaac and [*] Jacob being possessed of the lands as tenants in tail-general, were the first devisees in tail; and their children, whether male or female, would have been the second devisees in tail after their decease, “in the line of entailmentbut they dying without heirs, agreeably to the limitation of the estate, that line of entail~ ment became extinct; and William, on this contingency happening, took possession of this estate, as the first devisee in tail male general, “ in the line of entailment” mentioned in the second devise. William dying without male heirs of his body, agreeably to the limitation of the will, the reversion of this estate is in the heirs general of the testator; and mast be distributed according to the directions of our statute. — On the whole case, for the reasons given by my brother Pennington, I consider the plaintiff has a right to recover possession of ouch shares of this estate, as by the statute the lessors of the plaintiff are entitled to.
* Pennington, J.
— The first question arising in this case is, what estate William Hamilton took under the will of his lather? The will after creating an estate tail in Isaac and Jacob, continues thus: — “And if both my two sons, Isaac Hamilton, and Jacob Hamilton, should die without issue, then I give and bequeath all my lands unto my son William, and Ms male heirs. There cannot be a doubt that where lands are conveyed by a deed to a man and his male heirs, or heirs male, but that the grantee will have a fee simple. It is necessary in creating an estate-tail, to designate of *604 what body the heir inheritable shall issue. — But in case of Wills, the law supplies the words of the body. The weR known distinction between the construction of a deed and a will, causes the difference. It has been the settled law for two liuudred years, that where one devises land to a man and his heirs male, that this, by construction of law, is an eetate-tail. Coke Lit. 27, 3 Salk. 336, Carter-172, Mob. 32, 33, [*] 1 Vent. 228, 9, Ambler 12, 4, Bac. 256. William Hamilton therefore took an estate in tail male, unless our act pf Assembly, limiting estates in tail, Fat. 54, makes a difference. The object of that act was to break up the estate-tail after the first descent, and convert it into a fee simple jn the person of the second taker, in the line of descent, marked' out by the entailment. The words of the act, as it respects this case, are “all devises w'hieh shaH hereafter be made in tail of any kind, shall be deemed taken and adjudged to vest in, and entitle the person to 'whom the same may descend, agreeable to the devise or entailment, after the decease of the first devisee, to all the estate in the devised premises/’ &c. It is impossible that the Legislature should have meant by, “person tp whom the same may descend,” thefirst remainder-man in tail; the word descend wholly precludes that idea. But the counsel for the defendants contend, that the last clause in the act, restrained the testator from creating a remainder in tail; and that by at, tempting to do it, he lias vested a fee simple ip the devisee, so attempted to be made a remainder-man in tail. This clause i§ as follows: — “ That no entailment of any land, or ptüec real estate, shall continue to entail the same, in any pase whatever, longer than the life of the person to whom fhe same hath been, or shall be first given or devised by such entailment.” That is, the entailment itself shall not continue; it limits the entailment; so far the entailment shall go, and no farther. But this clause standing alone, is far fppm restraining the testator pr devisor from creating a remainder in tail. On a view of the whole act taken to, gether, it is evident to my mind, that the construction contended for by the counsel for the defendants, is foreign from the intention of the law maker. The title of the act is to limit estates,fail, not to prevent their creation. The preamble recites, as the mischief’ to be remedied by the act, that devises are spme-times made in tail, without limitation pf time, whereby the lieirs are put [*] to great expense in puing put recoveries, in order to dock such fe’ntails, for remedy, &c. The act ves't's-in tlie tenant in tail, a fee simple, in all estates that have passed through one descent, and áre in á second and more remote descent from the testator. A sup- *605 plemeiit to the act, explains these words to mean, being1 possessed by the first devisee in tail, and now the property of the next devisee in tail, after the decease of the first devisee in the line mentioned in the devise in tail. The act then goes on, provided they hold the same in the line of descent, mentioned in the devise in tail, which by the supplement, is explained tornean the line of entailment. The plain meaning of the act is, that when an entailment has been or shall be created, the entail shall not continue beyond the first descent. The word first in the concluding clause of the act, refers to the donee in tail, the person to whom the estate is given in tail; the original stock of the entailment. — I can perceive nothing, either in the letter or spirit of the act, to prohibit a remainder in tail from being created. It is, to be sure, limited in the same manner as the preceding entail; and that is the use and design of the act. It is said that although this construction will not create a perpetuity, yet it will tend to it. Not so: — To create an entail, or a remainder in tail, which in this respect is the same thing, there must be a description of the estate in tail, a designation of the person tq take the entail. Every one must perceive the difficulty in describing a person not in being, but to exist at some future period of time. Again, we are told by the counsel for the defendants, that the statute de donis, is notin force in New-Jersey; and that we are at common law. As to this, it is sufficient at this time to say, that the statute de donis was in force in this State at the death of the testator; and I apprehend that all rights acquired under it are valid. I am, therefore, of opinion, that William Hamilton took an estate in special-tail; that is he took an estate in tail male, and having left no [*] male issue, that the es-. tate, on his death, reverted to the heirs of Archibald Hamilton, the original donor; and that his heirs at lavy are entitled to the inheritance of the land. If I am correct in this, the plaintiff must recover on the demise of English. As to the demise of Crane, it is. contended that he purchased of persons out of possession; and therefore, that the purchase is void at common law. Whether such a purchase is void in this State, is a question that will, I understand, in a short time be sqbmitted to the consideration of this Court, and is of great importance. But I think it does not arise in this cause. The possession of Elizabeth Hamilton, the widow of William, at the time of the purchase, was either as guardian in socage to her children, the defendants, or as w'idow to the tenant in tail. If as guardian in socage to her children, the persons of whom Crane purchased, were tenants in common with these children; and the possession of one *606 tenant in common, is the possession of the other, unless there was an ouster, which the jury have not found. If the widow* 1234567 is to be considered as holding the place as widow, under our act of Assembly, until the assignment of her dower, yet I cannot consider it such a possession as w7ould render the sale of the heir at law void, even admitting the doctrine contended for, correct. The heir at law has a seizin in law. The possession of the widow is no disseizin, but a possession consistent with his right. If the tenant in tail die without issue, he in remainder, may lease the land to another before entry, 5 Com. Dig. 19. Whichever,way you take it, I think the sale w7as valid. On the whole of this case, I am of opinion, that the lessor of the plaintiff must recover nine out of sixteen parts of the premises; two sixteenths on the demise of Jacob English and wife, and seven on the demise of Isaac Watts Crane.
Judgment for plaintiff.*

 Mr. Leake, during the argument, furnished the Court with the following pedigree, which will not only throw light on the case itself, but will be of service in tracing the rights of heirs at law, under our act of Assembly, altering the law directing the descent of real estate, Pat 43.
PEDIGREE — According to the Special Verdict.
rr, „ -m?eT' a 'rr-vD 7 Archibald Hamilton, the Testator, by his first lire i Lo 1IUUK. j wife, had
1. Charles Hamilton, who died in 1770, before the decease of Archibald Hamilton, his father. Charles Hamilton left a daughter, Elizabeth Hamilton, who afterwards became by marriage, Elizabeth Hogbin.
Elizabeth Hogbin, widow, by deed of the 2nd day of7 CRANE, Oct. 1806, conveyed her share to Isaac Watts Crane. $ Lessor.
Archibald Hamilton, the Testator, by his secend Wife, had
II. William Hamilton, who died the eleventh day of September, 1802, intestate, and who left
1. Mary Hamilton, 2. Ann Hamilton, 3. Sarah Hamilton, 4. Elizabeth Hamilton, Jun. 5. Susannah Hamilton, 6. Hannah Hamilton, and 7. Rachel Hamilton.
Daughters of Will- . iam Hamilton and Defendants.
III. Margaret Hamilton, who died in October 1787, before the decease of Archibald Hamilton, her father. Margaret Hamilton became by marriage, Margaret Bishop, and left one child, namely, Susan-nah Bishop.
Susannah Bishop, by deed of the 13th day of June, 7 CRANE, 1809, conveyed her share to Isaac Watts Crane, j Lessor.
IV. Isaac Hamilton, who died in June, 1799, without issue.
V. Mary Hamilton, who married David English.
David English, and Mary his wife, are living, and Lessors,
VI. Susannah Hamilton, who died in August, 1797, without issue.
*607 VII. Jacob Hamilton, who died in December, 1789, without issue.
VIII. Abraham Hamilton, who died in December, 1803, and who left
1. His first Son, William Hamilton,
2. His second Son,
3. His third Son.
4 His first Daughter.
5. His second Daughter.
William Hamilton, first son of Abraham Hamilton, by deed of the 29th day of June, 1805, conveyed his share to Isaac, Watts Crane.
~),™ axtp C , " ^ Lessor.
IX. Ann Hamilton, who died in March, 1791, without issue.
The TESTATOR,
Archibald Hamilton, the Testator, made his Tesh tament and last Will the 13th day of March, J 1787, and died in December, 1788.
pt ATNETTFF
huA hi question, divided into sixteen equal shares. ‘ y as John Den, the Plaintiff, says.
CRANE, Lessor.
)-Margaret Hobgin to Crane, Shares. 4
HFTRS ’
"I'Phe seven daughters of William Hamilton, Son of 5 Archibald Hamilton, and heirs of their Father. 4
CRANE, Lessor.
)*Susannah Bishop to Crane. 3
ENGLISH, Lessor,
)-David English, and Mary his Wife. 2
CRANE Lessor 5 r'
7 William Hamilton, Son of Abraham Hamil_> ton, to Crane. 1
nuTnc 7 ‘' $
Two Sons and two daughters of Abraham Hamilton, being his heirs.3
Total of the land in question, Shares, 16